Ryan L. Holdaway, ISB #8289
Diane Pitcher, ISB #8340
**PITCHER & HOLDAWAY, PLLC**
40 W. Cache Valley Blvd., Ste. 3B
Logan, UT  84341
Telephone: (435) 787-1200
Facsimile: (855) 787-1200
Email: office@pitcherholdaway.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| ANNA PETERSON, an individual, and MARY HOLLENBAUGH, and individual, | ) ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiff. | ) ) | |
| | ) | Case No. _____ |
| v. | ) ) | Judge: _____ |
| UTAH STATE UNIVERSITY, UTAH STATE BOARD OF REGENTS, UTAH STATE UNIVERSITY BOARD OF TRUSTEES, KRYSTIN DESCHAMPS, an individual, JENNY ERAZO, an individual | ) ) ) | |
| Defendants. | | |

COME NOW the Plaintiffs, Anna Peterson, and Mary Hollenbaugh who for a cause of action allege and complain as follows:

### Status of the Parties

1. The Plaintiff, Anna Peterson, is a resident of the State of Utah and at all relevant times herein was a student at Utah State University.

2. The Plaintiff, Mary Hollenbaugh, is a resident of the State of Utah.

3. Defendant Utah State University ("USU") is a public postsecondary educational institution located in Logan, Utah. Utah State is a political subdivision or entity of the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

State of Utah. Utah State is organized and operated under the laws of the State of Utah and is a recipient of federal funds under 20 U.S.C. § 1681.

4. Defendant Board of Regents is the governing body for the Utah System of Higher Education granted power to control and manage the system of higher education by the Utah Legislature. The board is a political subdivision or entity of the State of Utah under the laws of the State of Utah and is a recipient of federal funds under 20 U.S.C. § 1681.

5. Defendant Krystin Deschamps was, at all relevant times, a citizen of Utah and was employed by USU as its Student Conduct Coordinator and Assessment Specialist.

6. Defendant Jenny Erazo was, at all relevant times, a citizen of Utah and was employed by USU as the coordinator for USU's Sexual Assault and Anti-Violence Information ("SAAVI") office.

**Jurisdiction and Venue**

7. To the extent it is applicable to any claim stated herein, the Plaintiffs have complied with the requirements of the Utah Governmental Immunity Act, Utah Code § 63G-7-101 et seq.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this litigation involves matters of federal law including claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq. and claims made under 42 U.S.C. § 1983 et seq.

9. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

## BACKGROUND

10. Prior to and during the predatory sexual assaults at issue in the present case, a dangerous environment existed at Utah State University where sexual assaults were known about and tolerated by the University and the individual defendants.

11. Neither the University nor the individual defendants properly investigated accusations made against students or take appropriate remedial actions to ensure that all students were afforded equal access to the University's educational opportunities.

12. For example, in early 2015, a USU student was sexually assaulted by another student, Ryan Wray, during a fraternity party.

13. USU learned of this incident but failed to properly investigate or take appropriate measures to ensure the safety of its students and prevent similar assaults from happening in the future.

14. By way of further example, some time prior to July 2015, five women reported being sexually assaulted by another USU student, Jason Relopez. USU failed to investigate, discipline or remove Relopez from the USU campus in order to ensure the safety of USU students.

15. Wray was convicted of attempted forcible sexual abuse in October of 2015.

16. Relopez was convicted of attempted rape and attempted forcible sexual abuse in February of 2016.

## GENERAL ALLEGATIONS

17. It was in this environment that the Plaintiff, Mary Hollenbaugh, met Torrey Green in November of 2013.

18. Ms. Hollenbaugh was on USU campus doing volunteer research with the school's Psychology Department in hopes that it would lead to admission to USU's PhD Psychology Program.

19. Green gained Ms. Hollenbaugh's trust by speaking about his status as a student at USU and a member of the school's football team.

20. Ms. Hollenbaugh did in fact trust Green more because of his status as a student at USU.

21. Ms. Hollenbaugh first met Green on the USU campus in the MerrilCazier library where Ms. Hollenbaugh spent most of her time.

22. When Ms. Hollenbaugh and Green met a second time in November of 2013 at Green's apartment, Green sexually assaulted her.

23. After the assault, Ms. Hollenbaugh experienced severe emotional disturbance and anger. As a consequence, she suffered the strain and loss of relationships both romantic and friendly.

24. During this time, Ms. Hollenbaugh saw Green on campus multiple times, causing her serious anxiety and depression.

25. Despite Plaintiff's anxieties and fears, Ms. Hollenbaugh attempted to continue her education and was admitted to USU's psychology PhD program in the Fall of 2014.

26. Unfortunately, the sexual attack, the knowledge that her attacker was still on campus, the knowledge that her attacker had not been investigated or monitored, and the hostile

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

environment his presence created led to Ms. Hollenbaugh becoming depressed and anxious to an extent that precluded her from accessing educational opportunities at USU.

27. Due to this anxiety and depression, Ms. Hollenbaugh found it so difficult to refrain from crying or otherwise breaking down in class that she was unable to pay attention or participate in class discussions.

28. Over the course of the Spring 2015 semester, Ms. Hollenbaugh's anxiety and depression worsened until she found herself unable to attend classes or meetings for her program.

29. Ms. Hollenbaugh was unable to register for PhD classes in the Fall of 2015 due to the ongoing psychological and emotional trauma from the sexual assault perpetrated by Green and enabled by the inaction of the University and its individual defendants.

30. The PhD program to which she had been accepted and planned on completing was intended to last 5 years, and would have ended in the Spring of 2019.

31. In October of 2014 another female USU student, C.D., met Torrey Green on the USU campus.

32. Shortly thereafter, she was raped and sexually assaulted by Green in his apartment.

33. Upon information and belief, C.D. reported the rape to a professor at USU as well as the school's Title IX office.

34. USU failed to investigate Green or implement appropriate remedial action to ensure the safety of its students.

35. In January, 2015 yet another USU student, V.G., came into contact with Torrey Green on the USU campus.

36. V.G. also agreed to meet with Green at his apartment.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

37. After luring V.G. to his apartment, Green sexually assaulted her while they were watching television.

38. V.G. reported the sexual assault later that same month to her resident assistant, the supervisor of her dormitory complex, and USU's SAAVI office.

39. Upon information and belief, the resident assistant and dormitory complex supervisors reported these accusations to the school's Title IX Office.

40. Officials in the SAAVI office discouraged V.G. from contacting the school's Title IX office directly and in an attempt to discourage her from pursuing the matter further, told her that if she did contact the Title IX office, the University would take over the investigation and do whatever they wanted regardless of her wishes.

41. V.G. then reported the assault to the Logan City Police.

42. V.G. left USU on February 1, 2015 shortly after contacting the SAAVI office.

43. Utah State University, through its SAAVI office, its Title IX office, and its resident assistants and dorm supervisors were aware of the assault perpetrated upon V.G.

44. Again, USU failed to investigate Green, implement appropriate remedial action or remove Green from campus to ensure the safety of its students.

45. On the contrary, in the summer of 2015, USU once again renewed, or otherwise failed to revoke, Green's athletic scholarship for the upcoming year in order to promote the success and revenue generating ability of their football team.

46. In June, 2015 yet another female USU student, the Plaintiff Ms. Peterson, met Green.

47. Ms. Peterson began speaking with Green only because they were both students at USU, and due to Green's status as a member of the university's football team.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

48. During conversations between the two and in order to gain Ms. Peterson's trust, Green repeatedly emphasized the fact that he was a student at USU, a member of the USU football team, and attended a class with one of Ms. Peterson's friends.

49. Ms. Peterson did in fact place greater trust in Green because he was a student, a member of the school's football team, and attended classes at USU.

50. Shortly after they first spoke, Green came to Ms. Peterson's apartment and sexually assaulted her.

51. Ms. Peterson would not have allowed Green into her apartment if it had not been for his status as a student and student-athlete at USU.

52. After the sexual attack, Ms. Peterson was unable to sleep, was unable to attend classes, and eventually moved back to Salt Lake to live with her family due to fear of seeing her rapist on campus and the defendants' failure to take remedial action.

53. In September 2015, Ms. Peterson was hospitalized for an infection (pelvic inflammatory disease) which was identified by Ms. Peterson's OBGYN as having been caused a certain sexually transmitted disease.

54. In October 2015, Ms. Peterson was hospitalized again due to the same infection resulting in appendicitis and an appendectomy.

55. Green has admitted to having the infectious disease identified by Ms. Peterson's OBGYN at the time he assaulted Ms. Peterson.

56. In October 2015, Ms. Peterson reported the assault to USU's SAAVI and Title IX offices as well as Krystin Deschamps.

57. Once Deschamps was made aware that Green was a member of the USU football team during their meeting, she actively discouraged Ms. Peterson from telling her his name.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

58. Deschamps told Ms. Peterson that if she did so, Ms. Peterson would have to be personally present at every hearing and any and every disciplinary action that might come about.

59. Deschamps told Ms. Peterson there was no way to make a report to her anonymously and that the school couldn't protect Ms. Peterson from retaliation by Green if she did report his name.

60. Deschamps told Ms. Peterson that she could instead report to SAAVI who would then report to her.

61. At the direction of the members of the SAAVI office, Ms. Peterson also met with an Americans with Disabilities Act Counselor at USU. Ms. Peterson informed this counselor of the nature of the attack perpetrated upon her and that it was Green who had done it.

62. Upon information and belief, by the time Ms. Peterson reported to the University, officials at the university who had authority to investigate and/or institute remedial measures on behalf of the University had already received several reports concerning sexual harassment and/or sexual assaults committed by Torrey Green, including, but not limited to, the reports made by C.D. and V.G.

63. Indeed, upon meeting with school officials, Ms. Peterson was told directly that they had already received multiple accusations of sexual assault against Green.

64. As of the date of this Complaint, Ms. Petersonhas still not graduated from college.

65. Ms. Peterson has been diagnosed with post-traumatic stress disorder as a result of the attack.

66. Ms. Peterson continues to suffer from nightmares, health problems, difficulty eating, and other severe effects.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

67. In November, 2015, another female student and student-athlete at USU, R.E., was sexually assaulted by Torrey Green.

68. R.E. reported the assault to USU's SAAVI office as well as the school's Title IX office that same month.

69. Upon information and belief, R.E. had a rape kit performed immediately or soon after the attack and the results of the rape kit were reported to USU.

70. On January 15, 2016, Eric Olsen and the head coach of the football team, Matt Wells, met with Green concerning the allegation of rape made by Plaintiff.

71. At the meeting, Olsen and Wells asked Green if the allegation of sexual assault was true.

72. However, following the meeting, neither Olsen, Wells, nor any person from Utah State University conducted the necessary further factual investigation of the multiple allegations made against Green to determine their validity.

73. Torrey Green, during all relevant periods, was a student at USU and a scholarship receiving member of the school's football team.

74. At no point did USU actively investigate Green or the accusations made against him.

75. Green was never academically disciplined by the University and was never removed from campus.

76. Indeed, the University allowed Green to remain a member of the USU football team and a student at USU until his graduation in May of 2016.

77. On January 18, 2019, Green was found guilty of five counts of rape, one count of sexual battery, one count of object rape, and one count of forcible sexual abuse.

78. This included a finding of guilt for the rape of the Plaintiffs.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

79. At all relevant times, students enrolled at USU, including Green, were subject to the Code of Policies and Procedures for Students at Utah State University ("Student Code")

80. The Student Code prohibited, both on and off campus, "inflicting physical or mental duress, harm, or abuse upon another person, including but not limited to verbal abuse, threats and intimidation, … [and] sexual violence..." *See* Utah State University's Code of Policies and Procedures for Students.

81. Utah State's Student Code promised that: "Utah State University will not tolerate sexual assault/violence in any form, including incidents which arise in acquaintance and date situations. Where there is reasonable cause that a sexual assault/violence has occurred, the University will pursue strong disciplinary action, including the possibility of suspension or expulsion from the University." *Id.*

82. At all relevant times, student-athletes enrolled at USU, including Green, were subject to the provisions of the Utah State Student Athlete Handbook ("Athlete Handbook").

83. The Athlete Handbook applied to behavior "both on and off campus" and set forth the following acts as subject to disciplinary action: "[e]ngaging in harassment or unlawful discriminatory activities on the basis of age, ethnicity, gender…"; and any conduct "contrary to the athletics department and university standards…" *See* Utah State's Student Athlete Handbook 2015-2016.

84. The athlete handbook also emphasizes that the University, and/or the athletic team to which the athlete belongs, had the power to suspend or entirely dismiss the student-athlete for "any physical or sexual contact that is accomplished against the will of another person." *Id.*

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

85. USU exercises substantial control over enrolled students on and off campus through its Student Code of Conduct.

86. USU also exercises substantial control over student-athletes both on and off campus through its Athlete Handbook policies.

87. Indeed, the existence of Utah State's Student Code and Athlete Handbook specifically recognizes Utah State's interest, ability, and role in curbing sexual assault, harassment and violence, both on and off campus.

88. Further, in its policy on sexual assault and violence, USU expressly committed to "investigate all reported incidents of sexual harassment" and, in cases where evidence from the investigation revealed that sexual harassment, including dating violence and sexual assault, had occurred, to impose appropriate sanctions upon students including suspension from Utah State. See Utah State University's Policy on Sexual Harassment.

89. In 2016, USU instituted a 3rd party investigation into their policies and reporting procedures following the institution of legal proceedings against Green. *See USU Update on 2016 Recommendation to Improve Sexual Violence Prevention Efforts.*

90. This report revealed egregious flaws in USU's policies and training of employees. *Id.*

91. The investigation found, among other flaws and failures, that:

    a.  "The departments responsible for investigation, adjudication, discipline, and advocacy had poor and irregular communication" which contributed to shortcomings in response efforts.

    b. Due to "inadequate and inconsistent training" employees did not understand their Title IX reporting obligations.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

c.  Inadequacies in the policies and procedures enacted for keeping track of reports led to a failure to respond to reports made.

d.  The University failed to establish clear procedures and train employees "for how to evaluate whether an investigation should move forward" under certain circumstances.

e.  The Student conduct office failed to take appropriate actions and this failure prevented certain instances of sexual conduct from being investigated. *Id.*

<u>**COUNT ONE**</u>
**VIOLATION OF THE EDUCATION AMENDMENTS OF 1972 (TITLE IX), 20 U.S.C. § 1981 et seq. AS TO ANNA PETERSON v. DEFENDANTS UTAH STATE UNIVERSITY, BOARD OF TRUSTEES, AND BOARD OF REGENTS**

92. The Plaintiffs reallege all preceding paragraphs as if fully set forth herein and incorporates them by reference.

93. The funding recipients exercised significant control over the harasser, Torrey Green, including but not solely through its disciplinary authority over its students through the Student Code, its disciplinary authority over student-athletes through the student-athlete code of conduct, its policies on sexual harassment, its control of scholarships, and student athlete sexual assault and misconduct policies.

94. Defendants were aware of sexual misconduct and harassment by Torrey Green before the assault occurred on plaintiff. Through its actions and inactions, Defendants created a climate where such misconduct was tolerated and encouraged repeated harassment which proximately caused injury and a violation of plaintiff's Title IX rights.

95. Defendants through their employees and administrators, including but not limited to, Jenny Erazo, the SAAVI OFFICE, the USU Title IX Office, USU Resident Assistants, and USU dorm supervisors had actual knowledge of the sexual assaults perpetrated by

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

Torrey Green and actual knowledge of the risk Torrey Green represented to the students of USU.

96. Persons at USU with actual knowledge had authority to take remedial action on behalf of the recipients.

97. By its actions and inactions prior to the Peterson's injury, Defendants acted with deliberate indifference to the rights of Plaintiff and other female students to a safe and secure educational environment free from discrimination, thus depriving plaintiff of equal access to the educational opportunities of the University.

98. Specifically, Defendants violated Title IX by:

   a. Refusing to take action to protect Peterson and other female Utah State students, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent future sexual assault and/or rape by Torrey Green

   b. Allowing Green to remain a student at Utah State or, alternatively, being deliberately indifferent to, despite allegations of sexual assault against Green;

   c. Refusing to enforce its own policies and requirements for students, or, alternatively, being deliberately indifferent to the enforcement thereof;

   d. Refusing to enforce its own policies and requirements for athletes, or, alternatively, being deliberately indifferent to the enforcement thereof;

   e. Actively facilitating Green's presence in Logan and on the USU campus by granting and renewing Green's scholarships.

   f. Actively facilitating Green's ability to persuade female students at USU to trust him due to his status as a student at USU and member of the USU football team by failing to revoke such status despite repeated allegations from multiple

**COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

different victims, of sexual assault against Green, or alternatively being deliberately indifferent thereto.

g.  Creating a climate that tolerated sexual assault and other misconduct by students generally and Green specifically, or, alternatively being deliberately indifferent thereto;

h.  Enacting and perpetuating an official policy or custom of deliberate indifference toward providing adequate training or guidance obviously necessary for implementation of the specific programs and policies of the recipient.

i.  Failing to implement policies and procedures to ensure compliance with Title IX, or, alternatively, being deliberately indifferent thereto;

j.  Failing to warn students of the known danger of sexual assault posed by Green;

k.  Failing to take appropriate action against Green for misconduct in violation of its own Student Code, or, in the alternative, being deliberately indifferent thereto;

l.  Failing to take appropriate action against Green for misconduct in violation of its own athlete handbook, or, in the alternative, being deliberately indifferent thereto;

m. Failing to take reasonable measures to investigate and verify the report of sexual assault and abuse by Green, and;

n.  Through other actions, inactions, and deliberate indifference.

99. Defendants' actions, inactions, and deliberate indifference subjected Peterson to harassment and discrimination, including sexual assault, rape, and deprivation of a safe educational environment.

100.    By its actions and inactions after the rape of Peterson, Defendants acted with deliberate indifference to the Peterson's right to a safe and secure educational

environment, thus depriving Peterson of equal access to the educational benefits of the university.

101.    Defendants' actions, inactions, and deliberate indifference subjected Peterson to further discrimination and harassment including, but not limited to, Defendants' inappropriate response to the sexual assault of Peterson by Green.

102.    Specifically, Defendants violated Title IX after the assault of Peterson by

    a.    Failing to provide adequate health and/or psychological services to Petersonafter she was sexually assaulted and raped or, alternatively, being deliberately indifferent thereto;

    b.    Failing to provide Peterson with academic assistance and services after she had been raped, or, alternatively, being deliberately indifferent thereto;

    c.    Failing to provide, offer, recommend, or coordinate adequate counseling for Peterson after she had been raped, or, alternatively, being deliberately indifferent thereto;

    d.    Failing to take reasonable measures to investigate and verify the report of sexual assault and abuse of Peterson by Green;

    e.    Failing to implement policies and procedures to ensure compliance with Title IX, or, alternatively, being deliberately indifferent thereto;

    f.    Failing to warn students of the known danger of sexual assault posed by Green;

    g.    Failing to take reasonable measures to investigate and verify even after multiple reports had been made against Green, or otherwise being deliberately indifferent to the reports;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 15**

h. Refusing to enforce its own policies and requirements for students, or, alternatively, being deliberately indifferent to the enforcement thereof;

i. Refusing to enforce its own policies and requirements for athletes, or, alternatively, being deliberately indifferent to the enforcement thereof;

j. Allowing Green to remain a student at Utah State or, alternatively, being deliberately indifferent to, despite multiple allegations of sexual assault against Green;

k. Failing to take appropriate action against Green for misconduct in violation of its own Student Code after multiple accusations of sexual assault against green, or, in the alternative, being deliberately indifferent thereto;

o. Failing to take appropriate action against Green for misconduct in violation of its own athlete handbook, or, in the alternative, being deliberately indifferent thereto;

p. Enacting and perpetuating an official policy or custom of deliberate indifference toward providing adequate training or guidance that is obviously necessary for implementation of the recipient's specific programs and policies, and;

l. Through other actions, inactions, and deliberate indifference.

103. As a direct and proximate result of Defendants' actions, inactions, and deliberate indifference, plaintiff has suffered severe and ongoing injuries, damages, and losses for which she is entitled to be compensated, including but not limited to:

a. Past, present, and future pain and suffering, both physical and emotional;

b. Past, present, and future psychological trauma and impairment;

c. Medical bills and other expenses for past and future treatment;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 16**

    d.   Interference with continuing education and lost educational time;

    e.   Impaired educational capacity;

    f.   Impaired earning capacity;

    g.   All relief that the Court deems fair and equitable, and;

    h.   Attorney's fees pursuant to 42 USC § 1988(b).

## COUNT TWO
### VIOLATION OF THE EDUCATION AMENDMENTS OF 1972 (TITLE IX), 20 U.S.C. § 1981 et seq. AS TO MARY HOLLENBAUGH v. DEFENDANTS UTAH STATE UNIVERSITY, BOARD OF TRUSTEES, AND BOARD OF REGENTS

104.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein and incorporates them by reference.

105. The funding recipients exercised significant control over the harasser, Torrey Green, including but not solely through its disciplinary authority over its students through the Student Code, its disciplinary authority over student-athletes through the student-athlete code of conduct, its policies on sexual harassment, its control of scholarships, and student athlete sexual assault and misconduct policies.

106.     Defendants through their employees and administrators, including but not limited to, Jenny Erazo, the SAAVI OFFICE, the USU Title IX Office, USU Resident Assistants, and USU dorm supervisors had actual knowledge of sexual assaults perpetrated by Torrey Green, actual knowledge of the risk Torrey Green represented to the students of USU, and actual knowledge of the hostile environment his presence on campus created.

107.     Persons at USU with actual knowledge had authority to take remedial action on behalf of the recipients.

108.     By its actions and inactions after these reports were made, Defendants acted with deliberate indifference to Hollenbaugh's right to a safe and secure educational

**COMPLAINT AND DEMAND FOR JURY TRIAL - 17**

environment, thus depriving Hollenbaugh of equal access to the educational benefits of the University.

109.    Defendants' actions, inactions, and deliberate indifference subjected Hollenbaugh to further discrimination, harassment, and deprivation of access to educational opportunities including but not limited to, Defendants' inappropriate response to the allegations of sexual assault made by multiple female students.

110.    Specifically, Defendants violated Title IX after the assault of Hollenbaugh by:

m.  Failing to take reasonable measures to investigate and verify the reports of sexual assault and abuse of USU students by Green;

n.  Failing to implement policies and procedures to ensure compliance with Title IX, or, alternatively, being deliberately indifferent thereto;

o.  Failing to warn students of the known danger of sexual assault posed by Green;

p.  Failing to take reasonable measures to investigate and verify the report against Green before or during Hollenbaugh's time as a PhD student including, but not limited to, reports made by C.D. and V.G.;

q.  Failing to take reasonable measures to investigate and verify even after multiple reports had been made against Green by the end of 2015, or otherwise being deliberately indifferent to the reports;

r.  Refusing to enforce its own policies and requirements for students, or, alternatively, being deliberately indifferent to the enforcement thereof;

s.  Refusing to enforce its own policies and requirements for athletes, or, alternatively, being deliberately indifferent to the enforcement thereof;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 18**

t.   Allowing Green to remain a student at Utah State University or, alternatively, being deliberately indifferent to, despite multiple allegations of sexual assault against Green;

u.   Allowing Green to remain a student at Utah State University or, alternatively, being deliberately indifferent to such, despite the allegations of sexual assault against Green made before and during Ms. Hollenbaugh's time at USU as a PhD student including, but not limited to, reports made by C.D. and V.G.;

v.   Failing to take appropriate action against Green for misconduct in violation of its own Student Code after multiple accusations of sexual assault against green, or, in the alternative, being deliberately indifferent thereto;

q.   Failing to take appropriate action against Green for misconduct in violation of its own athlete handbook, or, in the alternative, being deliberately indifferent thereto;

r.   Enacting and perpetuating an official policy or custom of deliberate indifference toward providing adequate training or guidance that is obviously necessary for implementation of the recipient's specific programs and policies, and;

w.   Through other actions, inactions, and deliberate indifference.

111.   As a direct and proximate result of Defendants' actions, inactions, and deliberate indifference, Hollenbaugh has suffered severe and ongoing injuries, damages, and losses for which she is entitled to be compensated, including but not limited to:

i.   Past, present, and future pain and suffering, both physical and emotional;

j.   Past, present, and future psychological trauma and impairment;

k.   Medical bills and other expenses for past and future treatment;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 19**

l.   Interference with continuing education and lost educational time;

m.  Inability to access the educational opportunities of USU during from 2014 to the planned end date of her program, Spring 2019.

n.   Impaired earning capacity;

o.   All relief that the Court deems fair and equitable, and;

p.   Attorney's fees pursuant to 42 USC § 1988(b).

<u>COUNT THREE</u>
**VIOLATION OF THE CIVIL RIGHTS OF ANNA PETERSON PURSUANT TO 42
U.S.C. SECTION 1983 *et seq.* v. ALL DEFENDANTS**

112.    The Plaintiffs reallege all preceding paragraphs as if fully set forth herein and incorporates them by reference.

113.    Ms. Peterson has a clearly established constitutional right under the Equal Protection Clause of the 14th Amendment to an educational environment free of sexual harassment as well as a clearly established right to bodily integrity.

114.    The University Defendants, acting under color of law in their official capacity as employees of the State of Utah, and with knowledge of these established rights, violated Peterson's right to an educational environment free from sexual harassment and her right to bodily integrity.

115.    Peterson's rights were violated due to the sexual assault and rape perpetrated against her by Green as well as the deliberate indifference to the reports of sexual assault made against Green prior to the attack including, but not limited to, reports made by C.D. and V.G.

116.    Peterson's rights were also violated due to the continued deliberate indifference of the Defendants after the assault perpetrated against Peterson, when—upon receiving

**COMPLAINT AND DEMAND FOR JURY TRIAL - 20**

multiple additional reports from students about Green's sexual assaults—Defendants failed to take any action to remedy the risk, failed to remove Green from the campus, and continued to facilitate Green's presence on campus, as well as facilitate Green's ability to use his status as a student at USU and a member of the USU football team to gain the trust of female students.

117.     These actions by Defendants were committed by employees acting pursuant to an expressly adopted University policy, employees acting pursuant to a longstanding practice or custom, and/or employees themselves responsible for establishing the relevant policies.

118.     Peterson's rights were further violated when University Defendants failed to provide Peterson with adequate counseling and education assistance or accommodations to assist her in continuing her education at USU following the assault.

119.     Additionally, the Defendants' were deliberately indifferent to the need to provide its employees with proper training regarding their legal duty to avoid violating student's rights.

120.     This is evidenced by a pattern of similar constitutional violations perpetrated on USU students by way of Defendants' failure to properly investigate and take remedial action after reports of sexual assault were made against students other than Green.

121.     This is also evidenced by the pattern of constitutional violations perpetrated by way of Defendants' failure to properly investigate and take remedial action after reports of sexual assault were made against Green.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 21**

122.     As a direct and proximate result of Defendants' actions, inactions, and deliberate indifference, Peterson has suffered severe and ongoing injuries, damages, and losses for which she is entitled to be compensated, including but not limited to:

    a.   Past, present, and future pain and suffering, both physical and emotional;

    b.   Past, present, and future psychological trauma and impairment;

    c.   Medical bills and other expenses for past and future treatment;

    d.   Interference with continuing education and lost educational time;

    e.   Impaired educational capacity;

    f.   Impaired earning capacity;

    g.   All relief that the Court deems fair and equitable, and;

    h.   Attorney's fees pursuant to 42 USC § 1988(b).

## COUNT FOUR
**VIOLATION OF CIVIL RIGHTS OF ANNA PETERSON PURSUANT TO 42 U.S.C. SECTION 1983 *et seq.* DUE TO CREATION OF DANGER v. ALL DEFENDANTS**

123.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein and incorporates them by reference.

124.     Peterson has a clearly established constitutional right under the Equal Protection Clause of the 14th Amendment to an educational environment free of sexual harassment as well as a clearly established right to bodily integrity.

125.     Defendants, acting under color of law in their official capacity as employees of the State of Utah, and with knowledge of these established rights, violated these rights

126.     Defendants affirmatively created a danger and/or otherwise increased Peterson's vulnerability to a danger by granting Torrey Green admission thus facilitating his presence on campus and in Logan.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 22**

127.     Defendants additionally created a danger and/or otherwise increased Peterson's vulnerability to a danger by granting Torrey Green a scholarship to attend USU, thus further facilitating his presence on the USU campus and in Logan.

128.     Defendants further created a danger and/or otherwise increased Peterson's vulnerability to a danger by failing to properly investigate accusations made against Green after affirmatively facilitating his presence on the USU campus and in Logan, Utah.

129.     Defendants further created a danger and/or otherwise increased Peterson's vulnerability to a danger by renewing, and otherwise failing to revoke, Green's scholarship and admission to USU at the beginning of each year, even in the face of repeated reports accusing Green of sexual assault, facilitating Green's continued presence on campus and in Logan.

130.     At all relevant times, Peterson was a member of a limited and specifically definable group, namely female students at USU.

131.     The Defendants conduct in actively facilitating a known sexual predator's presence on the USU campus and in Logan, Utah, and implicitly endorsing the behavior of a known sexual predator by failing to punish and affirmatively renewing his scholarship, put Peterson at substantial risk of serious, immediate, and proximate harm.

132.     Due to the multiple accusations and evidence given to the Defendants, this risk was obvious and known.

133.     Defendants acted recklessly and in conscious disregard of this risk by failing to investigate, punish, or otherwise take action to protect its female students.

134.     The conduct of Defendants, when viewed in sum, is shocking to the conscience.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 23**

135.     As a direct and proximate result of Defendants' creation of danger and deliberate indifference to it, Peterson suffered a violation of her constitutional right to bodily integrity and constitutional right to an education environment free of sexual harassment.

136.     As a direct and proximate result of Defendants' actions, inactions, and deliberate indifference, Peterson has suffered severe and ongoing injuries, damages, and losses for which she is entitled to be compensated, including but not limited to:

    i.  Past, present, and future pain and suffering, both physical and emotional;

    j.  Past, present, and future psychological trauma and impairment;

    k.  Medical bills and other expenses for past and future treatment;

    l.  Interference with continuing education and lost educational time;

    m.  Impaired educational capacity;

    n.  Impaired earning capacity;

    o.  All relief that the Court deems fair and equitable, and;

    p.  Attorney's fees pursuant to 42 USC § 1988(b).

## COUNT FIVE
### BREACH OF CONTRACT AS TO ANNA PETERSON v. UTAH STATE UNIVERSITY, BOARD OF REGENTS, AND BOARD OF TRUSTEES

137. The Plaintiffs reallege all preceding paragraphs as if fully set forth herein and incorporates them by reference.

138. The Student Code constitutes an agreement between Utah State University and its students and contains the promise that Defendants will properly and appropriately respond to reports of sexual assault, violence, and harassment in order to ensure the safety of all students.

COMPLAINT AND DEMAND FOR JURY TRIAL - 24

139. Defendants breached these provisions by failing to initiate and/or follow procedures and guidelines as to the discipline of a sexually violent student who caused harm to Peterson.

140. As a result of the breach of the agreement, Peterson was battered and sexually assaulted, endured physical and psychological trauma, medical bills and expenses, interference with continuing her education, an impaired educational capacity, and an impaired earning capacity.

141. Peterson was harmed as a result of said acts and is entitled to damages in an amount to be established at trial.

### <u>COUNT SIX</u>
### BREACH OF CONTRACT AS TO MARY HOLLENBAUGH v. UTAH STATE UNIVERSITY, BOARD OF REGENTS, AND BOARD OF TRUSTEES.

142. The Plaintiffs reallege all preceding paragraphs as if fully set forth herein and incorporates them by reference.

143. The Student Code constitutes an agreement between Utah State University and its students and contains the promise that Defendants will properly and appropriately respond to reports of sexual assault, violence, and harassment in order to ensure the safety of all students.

144. Defendants breached these provisions by failing to initiate and/or follow procedures and guidelines as to the discipline of a sexually violent student on their campus.

145. As a result of the breach of the agreement, Hollenbaugh endured emotional and psychological trauma, interference with continuing her education, an impaired educational capacity, and an impaired earning capacity.

146. Hollenbaugh was harmed as a result of said acts and is entitled to damages in an amount to be established at trial.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 25**

**Demand for Jury Trial**

147. The Plaintiffs demand a trial by jury as to all issues permitted under the Seventh Amendment of the U.S. Constitution and FRCP 38.

**Prayer for Relief**

WHEREFORE, the Plaintiffs pray for the following relief:

148. That the Plaintiffs be awarded economic damages in an amount to be determined at trial.

149. That the Plaintiffs be awarded their attorney's fees and costs as permitted under 42 U.S.C. § 1988(b) in an amount of not less than $1,000.00 if by default and not less than $10,000.00 if not by default, the exact amount to be established at trial or through appropriate memoranda and affidavit.

150. For non-economic damages in an amount to be determined at trial.

151. For any further relief as this Court deems proper and just.

DATED this 4th day of October 2019.

/s/ Diane Pitcher_____
Diane Pitcher
Attorney for Plaintiffs

**COMPLAINT AND DEMAND FOR JURY TRIAL - 26**